| | |
|---|---|
| Philip R. Sellinger (PS-9369) | Stephen F. Payerle |
| Ian S. Marx (IM-1704) | **McELROY, DEUTSCH, MULVANEY** |
| **GREENBERG TRAURIG, LLP** | **& CARPENTER, LLP** |
| 200 Park Avenue | Three Gateway Center |
| P.O. Box 677 | 100 Mulberry Street |
| Florham Park, New Jersey 07932-0677 | Newark, New Jersey 07102 |
| (973) 360-7900 (Phone) | (973) 622-7711 (Phone) |
| (973) 301-8410 (Facsimile) | |
| Attorneys for Plaintiff Cellco Partnership d/b/a Verizon Wireless | Attorneys for Plaintiff OnStar, LLC |

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS and ONSTAR, LLC, | Civil Action No. : 09-CV-3534 (MLC) |
| Plaintiff, | *Document Electronically Filed* |
| v. | |
| WILCREST HEALTH CARE MANAGEMENT INC. d/b/a "FAMILY CARE, INC.," FAMILY CARE, INC., ASSOCIATION HEALTH CARE MANAGEMENT, INC., BEECH HEALTHCARE, INC., JOHN DOE No. 1 (a/k/a owner, user or "spoofer" of telephone numbers 240-556-9958 and 781-331-9341) and JOHN DOES 2-50, | **FIRST AMENDED COMPLAINT** |
| Defendants. | |

Plaintiff Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless") and OnStar, LLC ("OnStar" and together with Verizon Wireless, "Plaintiffs"), by and through their

undersigned counsel, as and for its Verified Complaint against defendants WILCREST HEALTH CARE MANAGEMENT INC. d/b/a "FAMILY CARE, INC.," FAMILY CARE, INC., ASSOCIATION HEALTH CARE MANAGEMENT, INC., BEECH HEALTHCARE, INC., JOHN DOE NO. 1 (a/k/a owner, user or "spoofer" of telephone numbers 240-556-9958 and 781-331-9341) and JOHN DOES 2-50 ("Defendants") allege as follows:

## SUMMARY AND NATURE OF THE ACTION

1.   This action seeks to halt and recover damages caused by an illegal telemarketing campaign by Defendants.  Since late May 2009, Defendants or those acting on their behalf made **nearly one million** unsolicited telemarketing calls to Verizon Wireless subscribers, through the apparent use of an autodialing mechanism and a prerecorded message, offering to sell health insurance -– conduct that Congress expressly prohibited in the federal Telephone Consumer Protection Act ("TCPA") and that likewise violates state consumer fraud and privacy law. Defendants have also violated the Telemarketing and Consumer Fraud and Abuse Prevention Act and the FTC's telemarketing regulations by seeking to hide their identity when they place these unwanted telemarketing calls. Verizon Wireless and OnStar bring this action to preserve the privacy of their subscribers through entry of an injunction prohibiting Defendants' illegal conduct and an award of statutory and common law damages.

## THE PARTIES

2.   Verizon Wireless is a Delaware general partnership with its principal place of business at One Verizon Way, Basking Ridge, New Jersey.  Verizon Wireless is a leading provider of wireless communications with more than 80 million customers throughout New Jersey and the United States.  Many of Verizon Wireless' employees receive wireless telephone

service through "concession accounts," which are wireless phone lines that Verizon Wireless maintains for its own or its employees' use.

    3.    The partners in Cellco Partnership are:

        a.  **Bell Atlantic Mobile Systems, Inc., One Verizon Way, Basking Ridge, NJ 07920-1097,** a Delaware corporation with its principal place of business in New Jersey.

        b.  **GTE Wireless Incorporated, One Verizon Way, Basking Ridge, NJ 07920-1097**, a Delaware corporation with its principal place of business in New Jersey.

        c.  **PCS Nucleus, L.P.**, **Denver Place, South Tower, 999 – 18th Street, Suite 1750, Denver, CO  80202,** a Delaware limited partnership with its principal place of business in Colorado whose partners are:
- Vodafone Holdings LLC (general partner), a Delaware limited liability company with its principal place of business in Colorado
- Vodafone Americas Inc., a Delaware corporation with its principal place of business in Colorado

        d.  **JV PartnerCo, LLC**, **Denver Place, South Tower, 999 – 18th Street, Suite 1750, Denver, CO  80202,** a Delaware limited liability company with its principal place of business in Colorado

    4.    OnStar, LLC ("OnStar") is a Delaware limited liability company, which is owned by General Motors Company, a Delaware corporation with its principal place of business in Detroit, Michigan.  OnStar provides services to telematic equipment installed in millions of vehicles in the United States.  The OnStar system utilizes wireless communications to provide to its subscribers, among other things, a connection to emergency assistance and access to OnStar hands-free calling.  OnStar utilizes the Verizon Wireless network to provide these services.

    5.    Defendant Wilcrest Health Care Management, Inc. ("Wilcrest") is a Texas corporation with its principal place of business at 4900 Beech Street, Bellaire, Texas.  Upon information and belief, Wilcrest Health Care Management, Inc. also does business under the name "Family Care, Inc."

6.	Defendant Beech HealthCare, Inc. is a Texas corporation, whose principal place of business is, upon information and belief, 11111 Richmond Avenue, Suite 200, Houston, Texas.  As represented by Defendant Wilcrest's counsel, Beech is owned by Kristopher Rabie and is the successor-in-interest to Defendant Wilcrest.

7.	Defendant Family Care, Inc. is a Texas corporation with its principal place of business at 11111 Richmond Avenue, Suite 200, Houston, Texas.

8.	Defendant Association Health Care Management, Inc. ("AHCM") is, upon information and belief, a Texas corporation with a principal place of business at 11111 Richmond Avenue, Suite 200, Houston, Texas.

9.	Upon information and belief, AHCM, Family Care, Inc., Beech and Wilcrest, are affiliated entities.  AHCM, Family Care, Inc., Beech and Wilcrest are referred to together herein as "Defendants."

10.	AHCM, Wilcrest, Beech and Family Care, Inc., admittedly, have a common place of business and directors or officers who are related to one another.  AHCM maintains websites whose addresses are www.familycarecard.com and www.familycare.ima.  Wilcrest maintains a website whose address is www.familycarevalue.com.  The Defendants' websites refer to one another and contain common telephone numbers.  In addition, the mailing address listed for Wilcrest Health Care Management, Inc. in connection with the Family Care, Inc. website is 11111 Richmond Avenue, Suite 248, Houston Texas.

11.	As represented by AHCM's counsel to this Court, Defendants are common participants in a "multi-level marketing" endeavor, which she described as being "like Amway", with respect to the "Family Care" product, with AHCM residing at the top of the pyramidal structure.

12. Upon information and belief, Defendants have acted in concert with one another to place telemarketing calls to Verizon Wireless subscribers and concession accounts and to OnStar customers.

13. Verizon Wireless does not know the true names of the defendants sued herein as JOHN DOES 1 through 50 and therefore sues such defendants by such fictitious names. Verizon Wireless will amend this Complaint to set forth the true names of such defendants when the same are learned.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over Plaintiff's claims under the Telemarketing and Consumer Fraud and Abuse Prevention Act pursuant to 28 U.S.C. §1331 and 15 U.S.C. §6104(a) and has supplemental jurisdiction over Plaintiff's remaining claims pursuant to 28 U.S.C. §1367.

15. This court also has jurisdiction pursuant to 28 U.S.C. §1332 because the corporate partners of Verizon Wireless, OnStar, AHCM, Wilcrest Health Care Management, Inc., Beech HealthCare, Inc. and Family Care, Inc. are incorporated in, and have their principal places of business in, different states and the amount of the controversy exceeds $75,000, exclusive of interest and costs.

16. Venue is proper in this district in accordance with 28 U.S.C. §1391 because a substantial part of the events giving rise to the claims occurred in this district, or were directed toward Verizon Wireless in this district.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

17. Defendants have engaged in a campaign of making unsolicited telemarketing calls to Verizon Wireless subscribers on their wireless phones, including calls made to employee concession accounts, by using an autodialer and prerecorded voice (the "Telemarketing Calls")..

18. Since May 25, 2009, numerous Verizon Wireless customers and employees have received calls on their wireless telephones consisting of a prerecorded voice message inquiring if they were interested in obtaining health insurance and urging the recipient to press "1" to speak to a representative. When a recipient presses "1", he or she is connected to a person who asks if the customer is interested in obtaining health insurance.

19. The Verizon Wireless customers and employees who have received these calls have reported at least two phone numbers that appear on the caller ID when they received these calls. These numbers include: 240-556-9958 and 781-331-9341.

20. When Verizon Wireless customers and employees have attempted to call back these numbers, they have received an automated message indicating that they received a call from this number "in error" and directing them to press "1" to be removed from the list.

21. Upon information and belief, these caller ID's were being used by defendant Family Care, Inc. to make telemarketing calls.

22. On June 10, 2009, a Verizon Wireless customer received a call that appeared to be from (781) 331-9341 with an automated message seeking to sell her health insurance. After the customer pressed "1" in response to the message, she spoke to a representative named "Andres" and expressed interest in purchasing health insurance. "Andres" further inquired whether the customer had health insurance, who the customer's health insurance provider was and whether the customer had dental and vision insurance. The customer provided some information about her health insurance coverage. During that call, the representative indicated that he was calling on behalf of Family Care and provided a call back number of (866) 211-6790, extension 1709, and provided the internet website address www.familycarevalue.com.

23. Defendants have made nearly one million calls to Verizon Wireless customers and employees using the caller ID's listed above. Specifically:

    a. Verizon Wireless data indicate that 364,914 calls were placed to Verizon Wireless's customers and/or concession accounts with a caller ID of 240-556-9958 from May 25, 2009 to June 24, 2009, of which approximately 938 were to Verizon Wireless concession accounts.

    b. Verizon Wireless data indicate that 498,895 calls were placed to Verizon Wireless's customers and/or concession accounts with a caller ID of 781-331-9341 from May 25, 2009 to June 24, 2009, of which approximately 1,374 were to Verizon Wireless concession accounts.

24. Thus, in total, since May 25, 2009 alone, Defendants and/or those acting on their behalf have made at least 863,809 calls to Verizon Wireless customers and/or concession accounts, of which approximately 2,312 were made to Verizon Wireless concession accounts.

25. Upon information and belief, the volume of calls placed from a single telephone number during very short time spans demonstrates that they were made by using automatic telephone dialing system equipment that has the capacity to store or produce telephone numbers to be called using a random or sequential number generator. For instance, approximately 9.349 calls with a caller ID of 240-556-9958 were made between 4:00 p.m. and 5:00 p.m. on June 18, 2009, or on average, one call every .39 seconds.

26. Approximately 11,328 calls with a caller ID of 240-556-9958 were made between 4:00 p.m. and 5:00 p.m on June 19, 2009, or on average, one call every .32 seconds.

27. Approximately 4,175 calls with a caller ID of 781-331-9341 were made between 9:00 a.m. and 10:00 a.m. on June 8, 2009, or on average, one call every .86 seconds.

28.     Approximately 8,014 calls with a caller ID of 781-331-9341 were made between 4:00 p.m. and 5:00 p.m., or on average, one call every .45 seconds.

29.     At least 101,383 of the Telemarketing Calls were made to telephone numbers with New Jersey area codes.  Upon information and belief, these calls were made by Defendants using an automatic telephone dialing system to make outgoing calls.

30.     From May 21, 2009 through July 8, 2009, OnStar customers have been called over 88,000 times by caller ID 240-556-9958 and over 87,000 times by caller ID 781-331-9341.

31.     These Telemarketing Calls not only invade the privacy of Verizon Wireless' customers and employees, they also damage Verizon Wireless' relationships with its customers and impose customer service costs on Verizon Wireless.  Verizon Wireless customers who have received Telemarketing Calls may blame Verizon Wireless for the annoyance and intrusion they have suffered as a result of receiving these calls.  These customers will often call Verizon Wireless Customer Service to complain about the calls and to request credits for the airtime used by these calls, thus causing Verizon Wireless to incur significant additional costs as a result of these calls.

**OnStar Specific Allegations**

32.     OnStar has received numerous complaints from its customers that they have received unwanted calls on their OnStar wireless systems from various solicitors, including from Defendants named herein.  OnStar customers also complained that when the unwanted call was answered, a computerized sales message was received.

33.     In addition, because of the unique nature of the OnStar system, when calls are made to an OnStar customer's wireless device, OnStar must answer the call even if the customer is not in the vehicle and the vehicle is not in use.  Since these calls result in a connected call,

OnStar is billed for each such call that it is required to answer. Based on a review of its billing records, OnStar customers have received almost two hundred thousand calls from the telephone numbers identified herein.

34.     As set forth previously herein, based on the volume of calls placed from a single telephone number during very short time spans, OnStar believes that the calls were made by using automatic telephone dialing system equipment.

35.     As a result of these unwanted and unsolicited calls, OnStar has been significantly damaged in that (1) it has had to pay for calls that it is required to answer because of its unique operating system, (2) it has received numerous customer complaints and has been required to refund the cost of calls to its customers, and (3) the calls impose on OnStar additional customer service costs and interfere with its relationship with its customers. OnStar's actual damages to date exceed $75,000, and are accruing on an on-going basis. In addition, because the calls violate 47 U.S.C.A. § 227, *et seq.*, On Star is entitled to statutory damages of $500 for each telemarketing call made by, or on behalf of the Defendants to an OnStar subscriber.

## COUNT ONE
### (Violation of 47 U.S.C. § 277)

36.     Plaintiffs repeat and reallege the prior allegations of the Complaint as if set forth completely herein.

37.     The TCPA, 47 U.S.C. § 277, *et seq.*, was enacted to, among other things, protect the privacy interests of wireless telephone users from the use of automated dialing equipment or prerecorded voices to make unsolicited telemarketing calls to cellular telephones. The TCPA provides, in relevant part, that "[i]t shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express

consent of the called party) using any automatic telephone dialing system <u>or</u> an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone." 47 U.S.C. § 227(b)(1) (emphasis added).

38. The term "automatic telephone dialing system" means equipment which has the capacity "to store or produce telephone numbers to be called, using a random or sequential number generator; and . . . to dial such numbers." 47 U.S.C. § 227(a)(1).

39. Defendants have violated the TCPA, in that they have, within the United States, made calls to telephone numbers assigned to cellular telephones, not for emergency purposes and not made with the prior express consent of the called party, using (1) an automatic telephone dialing system, and/or (2) an artificial or a prerecorded voice and/or they have caused such calls to be made on their behalf, in which case the Defendants have obtained or have sought to obtain a financial benefit from such calls.

40. The TCPA specifically provides that an aggrieved party may institute a private right of action. It states, in relevant part, that "[a] person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State . . . an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation, . . . [and/or] to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(b)(3). Additionally an award of statutory or actual damages may be trebled by the court where a defendant has willfully or knowingly violates the TCPA.

41. Verizon Wireless is entitled to statutory damages of $500 for each Telemarketing Call made by or on behalf of Defendants to a Verizon Wireless concession account and actual

damages it has suffered as a result of Telemarketing Calls made to Verizon Wireless customers, such amounts to be trebled as result of Defendants' knowing and willful violation of the TCPA.

42. OnStar is entitled to statutory damages of $500 for each Telemarketing Call made by or on behalf of Defendants to an OnStar subscriber's telematic device which OnStar was required to answer and actual damages it suffered as a result of calls made to OnStar subscribers, with such amounts to be trebled as a result of Defendants' knowing and willful violation of the TCPA.

## COUNT TWO
### (Violation of 15 U.S.C. § 6101, *et seq.*)

43. Plaintiffs repeat and reallege the prior allegations of the Complaint as if set forth completely herein.

44. The Telemarketing and Consumer Fraud and Abuse Prevention Act (the "TCFAPA"), 15 U.S.C. § 6101 et seq., authorized the Federal Trade Commission to prescribe rules to prevent deceptive and abusive telemarketing practices.

45. Among the practices deemed abusive by the FTC in its rules promulgated pursuant to the TCFAPA is a telemarketer's "[f]ailing to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call. . . ." 16 C.F.R. § 310.4(a)(7).

46. Defendants have violated the TCFAPA and associated FTC regulations by preventing the actual phone number and name of the telemarketer from appearing on a customer's caller ID when they receive Telemarketing Calls and/or they have caused such calls

to be made on their behalf, in which case the Defendants have obtained or have sought to obtain a financial benefit from such calls.

47. .The FTC has also deemed it to be an abusive telemarketing practice for telemarketers to "fail to disclose truthfully, promptly and in a clear and conspicuous manner to the person receiving the call" the identity of the seller of the product being offered. 16 C.F.R. § 310.4(d).

48. Defendants have violated the TCFAPA and associated FTC regulations by refusing to disclose truthfully, promptly and conspicuously their identity to customers receiving their telemarketing solicitations and/or they have caused such calls to be made on their behalf, in which case the Defendants have obtained or have sought to obtain a financial benefit from such calls.

49. .The TCFAPA, 15 U.S.C. § 6104(a), permits any person "adversely affected by any pattern or practice of telemarketing which violates any rule of the Commission" to bring an action for damages and/or to enjoin such conduct if the amount in controversy "exceeds the sum or value of $50,000 in actual damages."

50. Verizon Wireless and OnStar have both suffered in excess of $50,000 in actual damages as a result of Defendants making hundreds of thousands of illegal Telemarketing Calls to Verizon Wireless customers and employees and almost two hundred thousand calls to OnStar subscribers.

## COUNT THREE
**(Violation of Consumer Fraud Act, N.J.S.A. 56:8-130)**

51. Verizon Wireless repeats and realleges the prior allegations of the Complaint as if set forth completely herein.

52. N.J.S.A. 56:8-130(a) prohibits telemarketers from making or causing to be made any telemarketing sales call to a commercial mobile service device of any customer.

53. N.J.S.A. 56:8-130(b) defines a "commercial mobile service device" to be "any equipment used for the purpose of providing commercial mobile service," including Verizon Wireless's customers' and employees' wireless phones.

54. Defendants have violated the Consumer Fraud Act, in that, acting as a telemarketer, they have made or caused to be made telemarketing sales calls to customers' commercial mobile service devices and/or they have caused such calls to be made on their behalf, in which case the Defendants have obtained or have sought to obtain a financial benefit from such calls.

55. Defendants' conduct of making unsolicited telemarketing calls to Verizon Wireless subscribers on their wireless phones, including calls made to employee concession accounts, and/or causing such calls to be made on their behalf, in which case the Defendants have obtained or have sought to obtain a financial benefit from such calls, violates N.J.S.A. 56:8-130.

56. As a result of Defendants' violation of the New Jersey Consumer Fraud Act, Verizon Wireless has both suffered injuries, damages and ascertainable losses of money.

## COUNT FOUR
### (Invasion of Privacy)

57. Verizon Wireless repeats and realleges the prior allegations of the Complaint as if set forth completely herein.

58. In engaging in the foregoing conduct, Defendants have intruded intentionally upon the solitude or seclusion of the recipients of the Telemarketing Calls, and/or upon their private affairs or concerns.

59. Such intrusion is, objectively, highly unreasonable and such conduct harms Verizon Wireless and its customers.

**WHEREFORE**, Plaintiffs demand the entry of a judgment as follows:

a. That Defendants and any of their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, be preliminarily and thereafter permanently enjoined from further making calls to wireless telephone numbers in violation of the TCPA, TCFAPA and the New Jersey Consumer Fraud Act;

b. That Plaintiffs be awarded statutory damages in the amount of $500 for each violation of the TCPA as pleaded herein by the making of a Telemarketing Call to a Verizon Wireless concession account, along with treble damages for Defendants knowing and willful violation of the TCPA; and

c. That Verizon Wireless be awarded treble damages, an award of reasonable attorneys' fees, filing fees and reasonable costs of suit pursuant to N.J.S.A. 56:8-19; and

    d.  That compensatory, consequential and punitive damages be awarded in favor of Verizon Plaintiffs and against Defendants, together with interest thereon;

    e.  That Plaintiffs be granted such other relief as this Court deems just and proper.

GREENBERG TRAURIG, LLP

By:   s/ Ian S. Marx
       Philip R. Sellinger
       Ian S. Marx

200 Park Avenue
P.O. Box 677
Florham Park, New Jersey  07932-0677
(973) 360-7900 (Phone)
(973) 301-8410 (Facsimile)

Attorneys for Plaintiff
*Cellco Partnership d/b/a Verizon Wireless*

-and-

McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
By:   s/ Stephen F. Payerle
       Stephen F. Payerle

Three Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-7711 (Phone)
Attorneys for OnStar, LLC

Dated:  August 28, 2009