**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                                     :
CELLCO PARTNERSHIP, d/b/a            :
VERIZON WIRELESS, et al.,            :
                                     : CIVIL ACTION NO. 09-3534 (MLC)
       Plaintiffs,                   :
                                     :    MEMORANDUM OPINION
       v.                            :
                                     :
WILCREST HEALTH CARE                 :
MANAGEMENT INC., d/b/a               :
"FAMILY CARE, INC.," et al.,         :
                                     :
       Defendants.                   :
_____:
```

**COOPER, District Judge**

Plaintiffs, Cellco Partnership d/b/a Verizon Wireless
("Verizon") and OnStar, LLC ("OnStar") (collectively,
"Plaintiffs"), commenced this action against defendants, Wilcrest
Health Care Management Inc., d/b/a "Family Care, Inc."
("Wilcrest"), Family Care, Inc., Association Health Care
Management, Inc. ("AHCM"), Beech Healthcare, Inc. ("Beech"),
AKXKA Plan Healthcare Inc. ("AKXKA"), Sweetwater Healthcare Inc.
("Sweetwater"), and Nationwide Media, Inc. ("Nationwide"),
alleging violations of the Telephone Consumer Protection Act
("TCPA"), 47 U.S.C. § 227.  (Dkt. entry no. 94, 2d Am. Compl. at
¶¶ 70-77.)  OnStar also asserts a claim for violation of the
Telemarketing and Consumer Fraud and Abuse Prevention Act
("TCFAPA"), 15 U.S.C. §§ 6101-6108, and the Federal Trade
Commission ("FTC") regulations implementing the TCFAPA, 16 C.F.R.

§ 310.4.  (Id. at ¶¶ 79-86.)  Federal question jurisdiction exists pursuant to 28 U.S.C. § 1331.  See Mims v. Arrow Fin. Servs., LLC, 132 S.Ct. 740, 745 (2012) (holding that TCPA's permissive grant of jurisdiction to state courts did not divest federal district courts of federal question jurisdiction over suits brought pursuant to TCPA's private cause of action).

Defendants AHCM and Family Care, Inc. (the "Family Care Defendants") now move to dismiss the Second Amended Complaint insofar as it is asserted against them for failure to state a claim upon which relief can be granted, for lack of standing, or pursuant to the Court's inherent powers; or for judgment on the pleadings; or alternatively for summary judgment, in the event the Court considers the matters outside the pleadings presented by the Family Care Defendants in conjunction with their motion. (Dkt. entry no. 100, Mot. Dismiss & Family Care Br. at 5-13.) Defendants Wilcrest, Beech, AKXKA, and Sweetwater (the "Retail Defendants") move separately to dismiss the Second Amended Complaint insofar as asserted against them on the same bases asserted by the Family Care Defendants.  (Dkt. entry no. 101, Mot. Dismiss & Retail Defs. Br. at 7-9.)  Both the Family Care Defendants and the Retail Defendants contend that the plaintiffs are not "consumers" for purposes of the TCPA or TCFAPA, and also that the Second Amended Complaint alleges that all the telephone calls at issue were made by a non-party to the action, and the

Second Amended Complaint therefore must be dismissed because the TCPA does not permit "on behalf of" liability in the absence of a contractual or agency relationship between the moving defendants and the non-party. (Family Care Br. at 12-13; Retail Defs. Br. at 9.)  It appears that non-served, non-movant defendant Nationwide "conducted Defendants' telemarketing campaign through the services of C1F, Inc. ("C1F"), which dialed the calls." (Dkt. entry no. 105, Pls. Opp'n Br. at 7; 2d Am. Compl. at ¶¶ 24-25.)  The Family Care Defendants contend that joinder of C1F and Nationwide is required by Federal Rule of Civil Procedure ("Rule") 19.  (Family Care Br. at 13.)

The Court decides the separate motions on the submissions of the parties, without oral argument, pursuant to Local Civil Rule 78.1(b).  The Court will decline the defendants' invitations  to convert the separate motions to ones for summary judgment under Rule 12(d), based on Plaintiffs' representation that discovery has been stayed and is yet incomplete, and also because the Court resolves the separate motions as facial challenges to the Court's subject matter jurisdiction for lack of standing, pursuant to Rule 12(b)(1).  (Dkt. entry no. 105, Pls. Opp'n Br. at 12.)  See Fed.R.Civ.P. 56(d). For the reasons stated herein, the separate motions will be granted.  In addition, the Second Amended Complaint insofar as it is asserted against Nationwide will be dismissed pursuant to Rule 4(m).

## I.   Background – "Press 1" Telemarketing Calls

The Second Amended Complaint asserts that the Family Care Defendants and the Retail Defendants are "affiliated entities" engaged in the business of marketing and selling discount health care plans.  (2d Am. Compl. at ¶¶ 11-12, 18.)  Plaintiffs allege that the Retail Defendants have common ownership; defendant Family Care, Inc., was created to hold the "Family Care" trade names and logos; and defendant AHCM is at "at the top" of a "multi-level marketing structure."  (Id. at ¶¶ 18-20.) Plaintiffs characterize the Retail Defendants as the "marketing arm or alter ego of AHCM."  (Id. at ¶ 29.)  The Retail Defendants allegedly retained the services of Nationwide to generate sales leads, which in turn "devised telemarketing campaigns" for the Retail Defendants and engaged C1F "to place telemarketing calls on behalf of" AHCM and the Retail Defendants.  (Id. at ¶¶ 24-25.) C1F, which has not been named a defendant in this action, dialed the calls using automatic dialing software licensed to it by NetDotSolutions, Inc. ("NetDotSolutions"), which is also not a party to this action.  (2d Am. Compl. at ¶ 26.)

Plaintiffs allege that the NetDotSolutions platform "allowed C1F to conceal its identity and the identities of the Family Care Entities on whose behalf it was calling by causing a telephone number known as an 'ANI' (automated numerical identifier) to be displayed on the recipient's caller ID instead of the Family Care

4

Entities' actual telephone numbers."  (Id. at ¶ 26.)[1]  The
telemarketing campaign allegedly used an autodialer and a
prerecorded voice to place unsolicited calls to cellular phones
in which the recipient was instructed to press "1" if he or she
was interested in purchasing discount health care plans (the
"'press 1' telemarketing calls").  (Id. at ¶¶ 22, 27.)  If the
recipient pressed "1," he or she would be transferred to a live
person.  (Id. at ¶ 27.)  Plaintiffs allege that these "press 1"
telemarketing calls included "literally hundreds of thousands of
calls to either (i) Verizon Wireless subscribers on their
wireless phones, including calls made to employee concession
accounts, or (ii) OnStar cellular equipment embedded in the
automobiles of OnStar's subscribers."  (Id. at ¶ 30.)

### A.   Allegations as to Verizon

Plaintiffs assert, with respect to Verizon, that "Concession
Accounts are cellular service accounts that are owned and paid
for by Verizon . . . [that it] either uses itself or makes
available to certain of its employees for the purpose of
conducting Verizon Wireless business," though "[s]ome of the
Concession Accounts are issued to employees for their own use."
(Id. at ¶¶ 31, 33.)  Verizon monitors employees' Concession
Account activity so it may "question any unusual or excessive

---

[1] Plaintiffs use the term "Family Care Entities" to refer
collectively to Wilcrest, Beech, AKXKA, Sweetwater, and AHCM.
(2d Am. Compl. at ¶¶ 18, 21.)

usage that could indicate noncompliance with company policy" directing that Concession Accounts be used primarily for Verizon's business purposes.  (Id. at ¶¶ 34-35.)

Beginning on or before May 25, 2009, Verizon customers and employees began receiving the "press 1" telemarketing calls from the numbers 240-556-9958 and 781-331-9341.  (Id. at ¶¶ 41-42.) Plaintiffs allege that between May 25, 2009, and June 24, 2009, Verizon Concession Accounts received 2,312 such calls, which Plaintiffs assert "have been conclusively associated with the Family Care Entities by analysis of calling records produced by NetDotSolutions and other evidence."  (Id. at ¶¶ 46-48.)[2] Verizon seeks to recover statutory damages of $500 for each "press 1" telemarketing call that was placed to a Concession Account between May 25, 2009 and June 24, 2009, or $1,156,000.00, subject to trebling for knowing and willful violation of the TCPA.  (Id. at ¶¶ 75-76.)  See 47 U.S.C. § 227(b)(3).

## B.  Allegations as to OnStar

OnStar "provides a variety of services to OnStar subscribers using data or voice transmissions through the OnStar equipment embedded in the subscriber's vehicle."  (2d Am. Compl. at ¶ 59.)

---

[2] The Second Amended Complaint also contains allegations regarding calls allegedly made to Verizon customers.  Such allegations are irrelevant to this action, insofar as Verizon purports to assert its TCPA claim with regard to calls allegedly made to Concession Accounts only.  (See 2d Am. Compl. at ¶¶ 45-58, 76.)  See Cellco P'ship v. Dealers Warranty, LLC, No. 09-1814, 2010 WL 3946713, at *10-11 (D.N.J. Oct. 5, 2010).

The services include the ability to make and receive phone calls in the vehicle, either by purchasing prepaid minutes or linking the equipment to an existing Verizon plan.  (Id.)  In order to provide such services, "the OnStar equipment embedded in a vehicle must accept every call to that vehicle, regardless of whether the vehicle is being operated or is occupied and regardless of whether the subscriber has purchased phone minutes and is able to receive telephone calls using the equipment." (Id. at ¶ 60.)

OnStar alleges that in instances where a subscriber (1) does not have minutes available, (2) is not operating the vehicle, or (3) does not answer the call, "OnStar is charged and pays for the use of the wireless cellular network based on the call answered by the OnStar equipment."  (Id. at ¶¶ 62-63.)  OnStar represents that these scenarios comprise "[t]he vast majority of calls made to OnStar equipment," causing OnStar to incur wireless charges for all such calls.  (Id. at ¶ 64.)  OnStar alleges that it has identified approximately 107,000 calls as having been made by Defendants to OnStar equipment for which OnStar paid wireless charges.  (Id. at ¶ 65.)  OnStar thus alleges that it has been damaged "in that it has had to pay for calls that it is required to answer because of its unique operating system."  (Id. at ¶ 68.)

OnStar seeks statutory damages of $500 per telemarketing call for which it was required to pay wireless charges, and further seeks to treble its damages award as a result of the allegedly knowing and willful violation of the TCPA.  (Id. at ¶ 77.)  See 47 U.S.C. § 227(b)(3).  OnStar also seeks to recover against Defendants pursuant to the TCFAPA on the basis that Defendants "prevent[ed] the actual telephone number and name of the telemarketer from appearing on a customer's caller ID when they receive Telemarketing Calls and/or they have caused such calls to be made on their behalf," alleging that OnStar has suffered in excess of $50,000 in actual damages "as a result of Defendants making hundreds of thousands of illegal Telemarketing Calls to OnStar subscribers' telematic equipment when OnStar pays for such calls."  (2d Am. Compl. at ¶¶ 81, 86.)

## II.  **Dealers Warranty Telemarketing Litigation**

Similar allegations to those made here were presented in Cellco Partnership d/b/a Verizon Wireless v. Dealers Warranty, LLC, No. 09-1814 (FLW) (D.N.J. filed Apr. 16, 2009) (the "Dealers Warranty litigation").  In that case, Verizon and OnStar complained that defendants, entities identified as "Caller Defendants," "Advertiser Defendants," and "Facilitator Defendants," engaged in automated dialing telemarketing campaigns using prerecorded "press 1" messages offering to sell extended automobile warranties, in violation of the TCPA and TCFAPA.

8

<u>Cellco P'ship</u>, 2010 WL 3946713, at *1-2.  On a motion to dismiss the Second Amended Complaint therein pursuant to either Rule 12(b)(1) or Rule 12(b)(6), the court considered the question of whether Verizon and OnStar had standing to assert claims under the TCPA, specifically, 47 U.S.C. § 227(b)(1)(A)(iii), which makes it unlawful "to make any call (other than a call made for emergency purposes or made without the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service. . . ."  2010 WL 3946713, at *9.  The court held that the TCPA's private cause of action, 47 U.S.C. § 227(b)(3), did not permit any "person or entity" to bring a claim for a violation, but rather, "under the statute's plain meaning," standing was limited to "the <u>intended recipient</u> of the call."  <u>Id.</u> at *10 (emphasis added).

The court observed that Verizon had conceded that it was "precluded from seeking recovery for direct damages in connection with calls made to its <u>subscribers</u> because those subscribers, who were undisputedly the intended recipients of the calls, are entitled to raise claims for statutory damages" under the TCPA, and therefore Verizon "on the record sought to narrow its claims under the TCPA to . . . calls made to its concession accounts only."  <u>Id.</u> at *11.  However, the court found that the Second Amended Complaint then before it failed to plead sufficient facts

regarding Verizon's concession accounts "to ascertain whether Verizon Wireless was the intended recipient of those concession account calls or whether the individual employees to whom the concession accounts were assigned were the intended recipients." Id.  The court concluded that it was "not prepared, on the record before it, to conclude whether Verizon indeed has standing to bring claims in connection with the concession account calls under the TCPA."  Id. at *12.

The court therefore granted leave to Verizon to re-plead its TCPA claims so as to provide an adequate factual basis to evaluate Verizon's standing with respect to the concession accounts, with the expectation that the parties would subsequently "adequately brief the issue of standing in light of Verizon's new factual allegations."  Id.  The court similarly found with respect to OnStar that it had not adequately pled its claim under the TCPA, and permitted amendment of the pleading, though the court expressed its "reservations as to the viability of OnStar's claims as OnStar's description of its service can arguably be likened to that of an answering service."  Id. at *13.  The arguments made by OnStar as to its proposed amended TCPA claim are similar to those made here:  that OnStar incurred wireless charges in instances where a subscriber has no minutes available, or is not in his or her vehicle at the time of the call.  Id.

10

A Third Amended Complaint was filed in that action, and the defendant Dealers Preferred Warranties, LLC moved to dismiss, arguing, <u>inter alia</u>, that (1) the TCPA does not permit "on behalf of" liability, but rather creates liability for the person or entity that actually makes prohibited telemarketing calls, and (2) the TCPA and TCFAPA are consumer protection statutes under which telecommunications providers lack standing to sue.  No. 09-1814, dkt. entry no. 150, 3d Am. Compl.; dkt. entry no. 168, Mot. to Dismiss.  The parties settled the case before the plaintiffs filed an opposition to the motion to dismiss or the court heard argument on the motion.  No. 09-1814, dkt. entry no. 174, 10-4-11 Order Dismissing Case.

## III. Applicable Legal Standards

### A.    Rule 12(b)(6) Standard

In addressing a motion to dismiss a complaint under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine, whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief." <u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008). At this stage, a "complaint must contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--that the 'pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Rule 8(a)(2)).

The Court, in evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, may consider the complaint, exhibits attached thereto, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

**B.   Standing and Rule 12(b)(1) Standard**

A motion to dismiss a complaint on the basis of a plaintiff's lack of standing implicates Rule 12(b)(1). Byers v. Intuit, Inc., 564 F.Supp.2d 385, 396 (E.D. Pa. 2008). A challenge to a court's subject matter jurisdiction pursuant to Rule 12(b)(1) "may be 'facial' or 'factual.' Facial attacks . . . contest the sufficiency of the pleadings, and the trial court must accept the complaint's allegations as true. . . . In a factual attack, the court must weigh the evidence relating to jurisdiction." Turicentro, S.A. v. Am. Airlines Inc., 303 F.3d 293, 300 n.4 (3d Cir. 2002). A court has discretion whether to

12

treat a Rule 12(b)(1) motion as either a facial or factual challenge.  <u>Byers</u>, 564 F.Supp.2d at 397 (citing <u>Gibbs v. Buck</u>, 307 U.S. 66, 71-72 (1939)).  The Court elects here to treat Defendants' statutory and prudential standing challenge as a facial attack on the Court's subject matter jurisdiction.[3]

Statutory standing is a matter of statutory interpretation: "whether Congress has accorded <u>this</u> injured plaintiff the right to sue the defendant to redress his injury."  <u>Graden v. Conexant Sys., Inc.</u>, 496 F.3d 291, 295 (3d Cir. 2007).  Courts first look to the plain language of the statute and then, "if ambiguous, to other indicia of congressional intent such as the legislative history."  <u>Id.</u>; <u>see also</u> <u>Cellco P'ship</u>, 2010 WL 3946713, at *8.

Judicially-imposed prudential considerations may also limit a plaintiff's standing to sue.  <u>Wheeler v. Travelers Ins. Co.</u>, 22 F.3d 534, 538 (3d Cir. 1994).  There is "a three-part test for assessing whether a party satisfies prudential standing:" (1) a plaintiff must "assert his or her own legal interests rather than those of a third party"; (2) "courts [should] refrain from adjudicating abstract questions of wide public significance

---

[3]  The Court does not consider the question of Plaintiffs' constitutional standing to be at issue; a facial reading of the Second Amended Complaint suggests that Plaintiffs can demonstrate (1) an injury in fact, (2) a causal connection between the injury and the conduct complained of, and (3) that the injury would likely be redressed by a favorable decision.  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992).  Therefore, the Court focuses on the questions of statutory and prudential standing only.

amounting to generalized grievances"; and (3) "a plaintiff must demonstrate that his or her interests are arguably within the 'zone of interests' that are intended to be protected by the statute, rule, or constitutional provision on which the claim is based." Mariana v. Fisher, 338 F.3d 189, 204-05 (3d Cir. 2003).

## IV. Analysis

### A. Telephone Consumer Protection Act

The parties make much of whether the named defendants in this action are the right defendants.  With respect to the TCPA claims, however, the Court finds the identity of the Plaintiffs dispositive, insofar as they attempt to use the statute in a way not intended or contemplated by Congress.  In short, Plaintiffs lack statutory standing under the TCPA, and further lack prudential standing because they do not fall into the "zone of interests" protected by the TCPA.

### 1. Statutory Standing

The TCPA, enacted in 1991, provides a private cause of action "to a person or entity," 47 U.S.C. § 227(b)(3), but "Congress made clear in subsections (A) and (B), that the private right of action must be based on a violation of the TCPA." Cellco P'ship, 2010 WL 3946713, at *9.  Thus, statutory standing to bring a private cause of action under the TCPA requires reference to the prohibited acts.  Id.  The section allegedly violated by Defendants provides that "[i]t shall be unlawful for

any person . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service."  47 U.S.C. § 227(b)(A)(iii).

A burgeoning body of case law establishes that only the "called party," i.e., the "intended recipient," has statutory standing to bring suit under the TCPA.  See Cellco P'ship, 2010 WL 3946713, at *9-10; Leyse v. Bank of Am., No. 09-7654, 2010 WL 2382400, at *4 (S.D.N.Y. June 14, 2010) (holding that only the intended recipient of a telemarketing call could pursue TCPA claim); Kopff v. World Research Grp., LLC, 568 F.Supp.2d 39, 40-42 (D.D.C. 2008).  In light of these holdings, Verizon endeavors to couch its claim in terms of its Concession Accounts, a paradigm in which Verizon paints itself as a consumer of the same services it provides.  (2d Am. Compl. at ¶¶ 31-40; Pls. Opp'n Br. at 22 ("Verizon Wireless, in addition to being a cellular service provider, is also a consumer of cellular services and is protected by the TCPA when it acts in that capacity."); id. at 24 ("Verizon Wireless is a business consumer as the subscriber to its Concession Accounts.").)  OnStar, similarly, pleads its TCPA claim in terms of the services it would like to provide to customers who would pay it for such services, but for reasons specific to its own business model, cannot pass along the cost to

"subscribers."  But it is apparent from a facial reading of the Second Amended Complaint that with respect to both Verizon and OnStar, those businesses were not the "intended recipients" of the "press 1" telemarketing calls; rather, the intended recipients were, respectively, (1) individuals in possession of Concession Account devices, whom Verizon concedes utilize such devices for personal use; and (2) OnStar subscribers who, for various reasons beyond either OnStar's or Defendants' control, did not utilize their OnStar telematic equipment in a manner that would allow OnStar to pass the cost of the calls to the subscriber.  (2d Am. Compl. at ¶¶ 33, 35, 62-63.)[4]

It strains credulity to countenance either Verizon or OnStar as the intended recipients of the "press 1" telemarketing calls regarding discount health care plans.  The Court thus finds that even as pleaded in the Second Amended Complaint, Plaintiffs do not have statutory standing to pursue their TCPA claims.

---

[4] This reasoning is consistent with a case that distinguished Cellco and Leyse to find that a plaintiff had statutory standing under the TCPA as a "called party" where "[d]efendant intended to call Plaintiff's cellular telephone number, Plaintiff received the calls, and Plaintiff is the regular user and carrier of the phone." D.G. ex rel. Tang v. William W. Siegel & Assocs., 791 F.Supp.2d 622, 625 (N.D. Ill. 2011) (denying motion to dismiss TCPA claims brought by plaintiff, where automated debt collection call was addressed to individual whom plaintiff did not know such that under Cellco and Leyse rationale, plaintiff would not be considered the intended recipient) (emphasis added).

### 2.   Prudential Standing

Even assuming, however, that a literal reading of the statute would permit Plaintiffs statutory standing as "a person or entity" who had been "called" (notwithstanding "intended recipient" status) to bring a private cause of action under 47 U.S.C. § 227(b)(3), the purpose and intent of the TCPA is not consistent with maintenance of such a cause of action, and must be dismissed on prudential grounds.  To the extent Plaintiffs attempt to assert claims for TCPA violations on behalf of themselves, as telecommunications providers, as opposed to on behalf of their subscribers, it is clear from an examination of the legislative history and case law interpreting the TCPA that Plaintiffs do not fall within the zone of interests protected by the statute for purposes of prudential standing.  Cf. Anderson v. AFNI, Inc., No. 10-4064, 2011 WL 1808779, at *6 (E.D. Pa. May 11, 2011) (holding that victim of identity theft's "interests in avoiding harassment via the telephone line installed in her home" fell "within the TCPA's zone of interests" and therefore had prudential standing) (emphasis added).

Senator Hollings, who introduced the bill in the Senate, stated in support of its passage that the federal legislation was "essential" to "protect citizens from telephone calls that cross State boundaries."  137 Cong. Rec. S16204 (daily ed. Nov. 7, 1991).  He stated that the TCPA's private cause of action would

17

"make it easier for <u>consumers</u> to recover damages from receiving
. . . computerized calls," allowing "<u>consumers</u> to bring an action
. . . against any entity that violates the bill."  <u>Id.</u> at S16205.
It was contemplated that such claims would be brought "preferably
in small claims court . . . or a similar court" in order to
"allow the consumer to appear before the court without an
attorney."  <u>Id.</u>  Senator Hollings explained that the statutory
damages set forth in the bill was "set to be fair to both the
consumer and the telemarketer."  <u>Id.</u>  The language in Section
227(b)(1)(A)(iii) prohibiting automated calls to "any telephone
number assigned to a . . . cellular telephone service . . . for
which the called party is charged for the call" clearly
contemplates a subscriber or customer of a telecommunications
service provider, not the provider itself.  Congress's concern in
passing the TCPA was for "[c]onsumers around the country,"
"citizens" for whom computerized telemarketing calls "wake us up
in the morning; . . . interrupt our dinner at night; . . . force
the sick and elderly out of bed; . . . hound us until we want to
rip the telephone right out of the wall."  <u>Id.</u> at S16205.

        Plaintiffs do not fall into the zone of interests protected
by the TCPA.  Their damages are not of the vexatious and
intrusive nuisance nature sought to be redressed by Congress in
enacting the TCPA, but rather are indirect, economic, and
inherent to their business.  That the TCPA is intended to be used

at the individual level is supported not only by the legislative history to that effect, but also the statutory exemption for otherwise prohibited calls to which the called party has consented.  47 U.S.C. § 227(b)(1)(A).  This exemption requires a per-phone-line inquiry that is at odds with Plaintiffs' allegations of thousands of allegedly illegal calls made to unidentified and unquantified "Verizon Concession Accounts" and, apparently, any and all OnStar equipment.  (See 2d Am. Compl. at ¶¶ 47-50, 64-65.)  We think it significant that Plaintiffs have abandoned any claim to actual damages, but solely seek statutory damages of $500 per call.  (Id. at ¶¶ 75, 77.)  As the moving defendants point out, "neither Verizon nor OnStar can plead lack of consent:  the right to consent to a telemarketing call belongs to [the] possessor of the Verizon or OnStar brand device or phone number."  (Family Care Br. at 23.)  In other words, while Plaintiffs have quantified calls from specific caller IDs allegedly made by Defendants, they provide nothing in the way of factual allegations regarding calls made to Concession Accounts that would suggest that Verizon, as opposed to the possessor of the Concession Account devices, is within the TCPA's zone of interests.  See j2 Global Commc'ns, Inc. v. Protus IP Solutions, No. 06-566 (DDP) (C.D. Cal.), dkt. entry no. 1267, 10-1-10 Order at 13-14 ("[T]he TCPA makes clear that 'the recipient' with standing to sue and 'the recipient' whose consent is relevant

under the [Established Business Relationship] exception are one and the same"). This is significant because the TCPA allows only one recovery per each allegedly illegal call. See Charvat v. GVN Mich., 561 F.3d 623, 630-33 (6th Cir. 2009).

The scale of the damages sought by Plaintiffs in this action further indicates that Plaintiffs do not fall into the zone of interests of the TCPA. The TCPA, as noted above, anticipates damages on an individual basis because the contemplated plaintiff is an individual natural person or business with a limited number of phone lines on which it might receive telemarketing calls. Congress contemplated that TCPA plaintiffs would bring claims in small claims court without the aid of an attorney. See Forman v. Data Transfer, Inc., 164 F.R.D. 400, 404-05 (E.D. Pa. 1995) (denying class action certification of TCPA claims because "[t]he statutory remedy is designed to provide adequate incentive for an individual plaintiff to bring suit on his own behalf") (emphasis added); Local Baking Prods., Inc. v. Kosher Bagel Munch, Inc., 23 A.3d 469, 476-77 (N.J. App. Div. 2011) (holding that TCPA claims may not be adjudicated as class actions under New Jersey law because Congress, "by imposing a statutory award of $500 . . . presented an aggrieved party with an incentive to act in his or her own interest without the necessity of class action relief"). Plaintiffs, on the other hand, seek enormous damages based on allegations of "hundreds of thousands" or even millions of calls,

without acknowledging that the only reason for this volume of
calls is due to the nature of their business, which is providing
telecommunications services rather than consuming them.  Cf.
Freedman v. Advanced Wireless Cellular Commc'ns, No. SOM-L-611-
02, 2005 WL 2122304 (N.J. Super. June 24, 2005) (vacating default
judgment and striking class allegations on basis that "[i]t would
be manifestly unjust to subject [defendant] to a $23,000,000
judgment (including attorney's fees) for damages to an entire
class of plaintiffs when Congress intended damages of $500 to be
pursued by individual plaintiffs").

     No amount of pleading additional facts as to either the
details of the Concession Accounts, such as which calls were
received by Verizon employees using the phone in either a
personal or business capacity, or calls received (or directed to)
but not paid for by OnStar subscribers, will cure the essential
jurisdictional defect of the Plaintiffs' lack of statutory and
prudential standing.  The TCPA claims asserted against the moving
defendants will be dismissed with prejudice as to both
Plaintiffs.

### B.    TCFAPA Claim

     The court in the Dealers Warranty litigation dismissed with
prejudice OnStar's claim that the defendants had violated the
TCFAPA with respect to "calls . . . which OnStar handled directly
without forwarding to its subscribers."  2010 WL 3946713, at *15.

In the Second Amended Complaint in this case, OnStar asserts exactly this same subset of calls:  allegedly "illegal Telemarketing Calls to OnStar subscribers' telematic equipment when OnStar pays for such calls."  (2d Am. Compl. at ¶ 86 (emphasis added).)

The Family Care Defendants argue that the TCFAPA exempts business-to-business calls from its protections.  (Family Care Br. at 29.)  This was the basis of the dismissal with prejudice of OnStar's TCFAPA claim insofar as asserted with respect to calls not actually answered by OnStar subscribers.  See 2010 WL 3946713, at *14-15 (holding that OnStar's claim under the TCFAPA "as the called part[y]" is "clearly barred by" 16 C.F.R. § 310.6(b)(7)).  Plaintiffs argue that it "is less than clear that a call to OnStar telematic equipment is a business to business call."  (Pls. Opp'n Br. at 28 n.18.)

The TCFAPA directs the FTC to "prescribe rules prohibiting deceptive telemarketing acts or practices and other abusive telemarketing acts or practices."  15 U.S.C. § 6102(a).  The FTC has done so, and the "Telemarketing Sales Rule" is codified at 16 C.F.R. Part 310.  Certain exemptions to the Telemarketing Sales Rule apply, including "[t]elephone calls between a telemarketer and any business, except calls to induce the retail sale of nondurable office or cleaning supplies."  16 C.F.R. § 310.6(b)(7) (emphasis added).

22

If, as OnStar argues and has alleged in the Second Amended Complaint, the "press 1" telemarketing calls complained of <u>cannot</u> possibly be answered by an OnStar subscriber because, <u>e.g.</u>, the subscriber has not purchased prepaid minutes or is not in the vehicle, there is no way to view these calls other than as being made to OnStar as a business.  What OnStar characterizes as its "unique operating system" is nothing more than its own business model, which necessarily contemplates the situations into which OnStar attempts to shoehorn its TCFAPA claim.  (2d Am. Compl. at ¶ 68; Pls. Opp'n Br. at 29.)  We therefore find that OnStar's TCFAPA claim is barred by the exemption for calls between a telemarketer and any business.  16 C.F.R. § 310.6(b)(7).

## V.   Nationwide

Rule 4(m) states that "[i]f a defendant is not served within 120 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed.R.Civ.P. 4(m).[5]  Plaintiffs have failed to serve Nationwide. Thus, the Court will dismiss the claims asserted against Nationwide pursuant to Rule 4(m).

---

[5] Although Rule 4(m) requires that dismissal of an action as against an unserved defendant be without prejudice, had Nationwide been served and moved for dismissal on the same grounds raised by the moving defendants, the Court would have dismissed the claims insofar as they are asserted against Nationwide with prejudice for the reasons discussed in this Memorandum Opinion.

**CONCLUSION**

For the reasons discussed _supra_, the Court will grant the separate motions to dismiss.  In addition, the Court will dismiss the Second Amended Complaint insofar as it is asserted against Nationwide pursuant to Rule 4(m).  The Court will issue an appropriate Order and Judgment.


   s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge


Dated:   May 8, 2012

24